TODD KIM
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice
BRIAN SCHAAP (DC Bar No. 1780655)
Trial Attorney
PATRICIA L. HURST
Senior Counsel
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, DC 20044
Brian.Schaap@usdoj.gov
Telephone: (202) 598-0116

Attorneys for Plaintiff United States of America

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA
## PRESCOTT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>NAVAJO TRIBAL UTILITY AUTHORITY,<br><br>    Defendant. | Civil Action No._____<br><br>**COMPLAINT** |

The United States of America, by authority of the Attorney General of the

United States and through its undersigned attorneys, acting at the request of the

1

Administrator of the United States Environmental Protection Agency ("EPA"), files this Complaint and alleges as follows:

## NATURE OF ACTION

1. This is a civil action for penalties and injunctive relief brought under Section 309(b) and (d) of the Clean Water Act ("Act" or "CWA"), 33 U.S.C. § 1319(b) and (d), against Defendant Navajo Tribal Utility Authority ("Defendant" or "NTUA") for violation of limitations and conditions established in the National Pollutant Discharge Elimination System ("NPDES") permits issued to NTUA by EPA under Section 402 of the Act, 33 U.S.C. § 1342.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over the parties and subject matter of this action pursuant to Section 309(b) of the CWA, 33 U.S.C. § 1319(b), and 28 U.S.C. §§ 1331, 1345 and 1355.

3. Venue is proper in the District of Arizona pursuant to Section 309(b) of the CWA, 33 U.S.C. § 1319(b), because it is the judicial district where Defendant is located.

## PARTIES

4. Plaintiff United States of America has authority to bring this action on behalf of the Administrator of EPA under Section 506 of the Act, 33 U.S.C. § 1366, and 28 U.S.C. §§ 516 and 519.

5. The NTUA is established by and chartered under the laws of the Navajo Nation.

6. Under the Navajo Tribal Code, the purpose of NTUA is "to operate, maintain, and promote … utility systems furnishing … water [and] sewer utility services … for the benefit of residents of the Navajo Nation, including the establishment, ownership, operation and maintenance" of these utility systems. 21 Navajo Tribal Code ("N.T.C.") § 5(a)(1). NTUA is required to take title to real property and other acquisitions in the name of the Navajo Nation, to exercise its authorized powers in the best interests of the Navajo Nation, and to provide the Navajo Nation with a fair return on its investment. 21 N.T.C. §§ 7(b)(5), 7(a)(5), 5(a)(6). The Tribal Code authorizes NTUA to sue or be sued in its name. 21 N.T.C. § 7(b)(14).

7. As relevant to this Complaint, NTUA is responsible for providing wastewater treatment services at three wastewater treatment facilities within the Navajo Nation in Northeastern Arizona. These facilities are the Chinle, Kayenta, and Tuba City wastewater treatment facilities (each a "Facility" and collectively "the Facilities").

8. The Chinle Facility, located in the Navajo Nation's northern area, receives sewage from homes, schools, and commercial businesses, serves approximately 4,500 people, and has a design flow capacity of 0.45 million gallons per day.

3

9. The Kayenta Facility, located in the north-central portion of the Navajo Nation, receives domestic sewage, serves approximately 3,600 people, and has a design flow capacity of 0.88 million gallons per day.

10. The Tuba City Facility, located in the western side of the Navajo Nation, serves approximately 10,000 people and has a design flow capacity of 1.0 million gallons per day.

11. The NTUA is a "municipality" within the meaning of Section 502(4) of the CWA, 33 U.S.C. § 1362(4), because it is an "authorized Indian tribal organization."

12. For purposes of federal enforcement, the NTUA is a "person" within the meaning of Section 502(5) of the CWA, 33 U.S.C. § 1362(5), because it is a "municipality."

13. Each Facility is a "treatment works" as that term is defined in Section 212(2) of the CWA, 33 U.S.C. § 1292(2), and a "publicly owned treatment works" ("POTW") as that term is defined in EPA regulations implementing the CWA, 40 C.F.R. § 122.2 (cross-referencing the definition at 40 C.F.R. § 403.3(q)).

## STATUTORY AND REGULATORY BACKGROUND
### Clean Water Act

14. Under Section 402(a) of the CWA, 33 U.S.C. § 1342(a), EPA may issue NPDES permits to authorize the discharge of pollutants into waters of the United

States, subject to the conditions and limitations set forth in such permits, including effluent limitations.

15. Effluent limitations, as defined in Section 502(11) of the CWA, 33 U.S.C. § 1362(11), are restrictions on quantity, rate, and concentration of chemical, physical, biological, and other constituents which are discharged from point sources.

16. Pursuant to 40 C.F.R. § 122.41, an NPDES permit must include all the conditions in the paragraphs of 40 C.F.R. § 122.41, which include, among others, a requirement that the permittee shall at all times properly operate and maintain all facilities and systems of treatment and control (and related appurtenances) which are installed or used by the permittee to achieve compliance with the conditions of its permit. 40 C.F.R. § 122.41(e).

17. Pursuant to 40 C.F.R. § 122.41(a), a permittee must comply with all conditions of its NPDES permit.

18. Section 309(a)(3) of the CWA, 33 U.S.C. § 1319(a)(3), authorizes EPA to issue compliance orders whenever it finds that any person has violated any condition or limitation in an NPDES permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

19. Section 309(b) of the CWA, 33 U.S.C. § 1319(b), authorizes EPA to commence a civil action to obtain appropriate relief, including a permanent or temporary injunction, when any person violates any condition or limitation in a permit issued under Section 402 of the CWA, 33 U.S.C. § 1342.

20. Section 309(d) of the CWA, 33 U.S.C. § 1319(d), and 40 C.F.R. § 19.4, provide that any person who violates any condition or limitation contained in an NPDES permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342, shall be subject to a civil penalty not to exceed $64,618 per day for each violation which takes place after November 2, 2015.

## GENERAL ALLEGATIONS
### Defendant's Facility Operations

21. Defendant is responsible for operating and maintaining the sewage wastewater treatment Facilities at Chinle, Kayenta, and Tuba City, which are located within the boundaries of the Navajo Nation.

22. Each Facility's collection system conveys untreated sewage to lagoons for settling, aeration, biological treatment, and disinfection before discharging treated sewage wastewater.

### Defendant's NPDES Permits

23. EPA administers the NPDES program in the Navajo Nation pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

24. At all times relevant to this Complaint, Defendant was and is required to operate the Facilities pursuant to NPDES permits.

25. Defendant has and continues to operate the Tuba City Facility under the authority of NPDES Permit No. NN0020290. EPA reissued this Permit most recently in 2016 ("2016 Permit") and in 2022 ("2022 Permit"). The 2022 Permit has an effective date of May 1, 2022.

26. Defendant has and continues to operate the Chinle Facility under the authority of NPDES Permit No. NN0020265. EPA reissued this Permit most recently in 2012 ("2012 Chinle Permit") and in 2018 ("2018 Chinle Permit"). The 2018 Permit has an effective date of September 1, 2018.

27. Defendant has and continues to operate the Kayenta Facility under the authority of NPDES Permit No. NN0020281. EPA reissued this Permit most recently in 2012 ("2012 Kayenta Permit") and in 2018 ("2018 Kayenta Permit"). The 2018 Permit has an effective date of August 1, 2018.

28. Defendant is subject to the requirements of the CWA, regulations implementing the CWA, and the Facilities' NPDES Permits.

29. The Facilities' NPDES Permits authorize Defendant to discharge treated sewage wastewater subject to certain terms and conditions stated in the applicable NPDES permit.

30. The Facilities' NPDES Permits contain the following terms and conditions:

    a. Each Permit authorizes Defendant to discharge from a designated discharge point, defined as Outfall No. 001 at each of the three Facilities, to designated receiving waters.

    b. Each Permit contains the limitations and monitoring requirements for effluents discharged from each Facility's discharge point at Outfall No. 001.

c. Each Permit establishes, among other things, the specific effluent limitations for certain pollutants, including biochemical oxygen demand ("BOD"), total suspended solids ("TSS"), fecal coliform (*E. coli*) bacteria, total ammonia, and pH, discharged from each Facility's discharge point at Outfall No. 001.

d. Each Permit establishes the specific monitoring and sampling requirements, including type and frequency, for influent entering each Facility and for effluent discharges from each Facility's discharge point at Outfall No. 001.

e. Each Permit requires Defendant to at all times properly operate and maintain all facilities and systems of treatment and control installed to achieve compliance with the Permit.

f. The Chinle and Kayenta Facilities' current 2018 Permits and the Tuba City 2016 Permit require Defendant to submit sewage sludge reports ("Biosolids Plans") to EPA quantifying solids generated at the Facility and describing how Defendant intends to manage the removal and disposal of these solids. The Permits require Defendant to submit a Biosolids Plan for each Facility within 90 days of the Permit's effective date.

g. A Special Condition (Part III.E.) of the 2018 Chinle and Kayenta Permits requires Defendant to develop an Asset Management Program

       that provides an inventory of the Facilities' treatment and collection systems. Specifically, the Special Condition requires that Defendant procure and use software to compile an inventory of all critical assets and assets valued over $5,000 into a single database.

  h.  Each Permit requires Defendant to submit monthly Discharge Monitoring Reports ("DMRs") to EPA for the previous three months on a quarterly basis no later than the 28th day of the month following the previous quarterly reporting period. The 2016, 2018, and 2022 Permits require Defendant to electronically submit the DMRs using EPA's electronic reporting tool.

  i.  Each Permit requires Defendant to comply with all conditions of the Permit.

### Defendant's NPDES Permit Violations and Compliance History

31. Defendant has violated multiple conditions and limitations of the 2012, 2016, 2018, and 2022 NPDES Permits as described below.

32. These violations have occurred within the context of Defendant's years-long pattern of noncompliance with its NPDES Permits and the CWA in the management and operation of its wastewater treatment facilities.

33. In 2014, the Navajo Nation Environmental Protection Agency ("NNEPA") entered into an Administrative Order on Consent with Defendant to bring the Chinle, Kayenta, and Tuba City Facilities into compliance with the Navajo

Nation Clean Water Act ("NNCWA"). The NNCWA requirements Defendant must follow closely mirror the requirements it must follow in its NPDES Permits issued by EPA. Defendant failed to fully and timely comply with the requirements of this Administrative Order.

34. On September 29, 2016, EPA entered into three parallel Administrative Orders on Consent ("Orders") with Defendant — one for each Facility. These Orders directed Defendant to undertake specified measures at each Facility to prevent additional violations and to bring each Facility into compliance with its NPDES Permit requirements and the CWA no later than January 31, 2017 for the Chinle and Kayenta Facilities and April 30, 2017 for the Tuba City Facility.

35. Defendant failed to fully and timely comply with the 2016 EPA Orders.

## FIRST CLAIM FOR RELIEF
**(Failure to Comply with NPDES Permit Conditions: Effluent Limit Violations)**

36. The allegations of Paragraphs 1–35 are realleged and incorporated herein by reference.

37. Based on DMRs and other sampling analysis submitted by Defendant to EPA, Defendant exceeded applicable effluent limitations in the NPDES Permits on at least 653 occasions since December 2018. See Appendix A.

38. Discharge of pollutants in treated wastewater in excess of the limits specified in Defendant's NPDES Permits can pose a significant risk of harm to the environment. For example, excessive BOD can leave water with less oxygen to support fish and other aquatic life; excessive TSS reduces the clarity of water, which

negatively impacts the aquatic environment by reducing the amount of sunlight that can penetrate water; excessive levels of total ammonia can create an imbalance of nutrients leading to excessive algal growth; and pH exceedances can pose an immediate risk of harm to the sensitive organs of aquatic life, such as the gills and eyes of fish.

39. Discharge of pollutants in treated wastewater in excess of the limits specified in Defendant's NPDES Permits can also pose a significant risk of harm to public health. For example, *E. coli*, if ingested, can lead to potentially severe illness. Children, the elderly, people with weakened immune systems, and pregnant women are at more risk for adverse consequences from such illness than the general population.

40. Each failure to comply with an effluent limitation in the NPDES Permits is a separate violation of a condition or limitation in an NPDES permit issued under Section 402 of the CWA, 33 U.S.C. § 1342, and a violation of the CWA. These violations are ongoing.

41. Under Section 309(d) of the CWA, 33 U.S.C. § 1319(d), and 40 C.F.R. § 19.4, Defendant is liable for a civil penalty of up to $64,618 per day for each violation of any condition or limitation in a permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342. Unless restrained by an order of the Court pursuant to Section 309(b) of the CWA, 33 U.S.C. § 1319(b), Defendant will continue to violate

the conditions or limitations of its NPDES Permits and the CWA by discharging wastewater that exceeds the applicable effluent limitations of the Permits.

## SECOND CLAIM FOR RELIEF
**(Failure to Comply with NPDES Permit Conditions: Operation and Maintenance Violations)**

42. The allegations of Paragraphs 1–35 are realleged and incorporated herein by reference.

43. At each of the Facilities, Defendant failed to properly operate and maintain its facilities and systems of treatment and control to achieve compliance with the conditions of its permit, as described below.

44. During an EPA compliance inspection visit at the Chinle Facility on September 13, 2017, EPA inspectors documented that Defendant had converted the Facility from a three-cell lagoon treatment system to a single-cell lagoon system. At a subsequent compliance visit, on December 4, 2018, EPA inspectors found that Defendant was continuing to use only the one treatment cell. This change had not been authorized by EPA and resulted in a significant reduction in the Facility's treatment capacity. Defendant's decision to reduce lagoon capacity and its subsequent failure to adjust operation and maintenance accordingly have contributed to its ongoing inability to meet its NPDES permitted effluent limits at this Facility. As of the date of this Complaint, Defendant continues to use only the one lagoon cell for wastewater treatment. This deviation from the Facility's treatment system design

constitutes a failure by Defendant to properly operate and maintain the Chinle Facility to achieve compliance with the conditions of its Permit.

45. During an EPA compliance inspection visit at the Kayenta Facility on September 13, 2017, EPA inspectors discovered that Defendant had failed to properly maintain its wastewater treatment lagoon system. Inspectors observed a bowed and inoperable baffle in the lagoon system, which was preventing adequate retention time, distribution of aeration, and settling of solids. Inspectors also found several gate valves in poor repair or no longer functioning. At a subsequent compliance visit, on December 6, 2018, EPA inspectors found evidence that Defendant had not adequately maintained the Facility's lagoon system cell liners. Inspectors found several gaps and tears in the liners, which exposed underlying sediment and rock to wastewater flows. Inspectors also found that Defendant had allowed multiple gate valves to malfunction for an undetermined length of time. As of the date of this Complaint, Defendant has not repaired the bowed baffle, the torn cell liners, or the broken gate valves. Each of these deviations from the Facility's treatment system design constitutes a failure by Defendant to properly operate and maintain the Kayenta Facility to achieve compliance with the conditions of its Permit.

46. During an EPA compliance inspection visit at the Tuba City Facility on September 14, 2017, EPA inspectors discovered that Defendant had failed to adequately maintain an effluent pipe located outside the Facility's fence line.

Defendant had created a large hole in the pipe from which to draw unauthorized water quality samples.  EPA determined that this open hole in the effluent pipe posed health concerns due to its easy public access, and thereafter made several requests to Defendant for its repair.  At a subsequent compliance visit, on December 6, 2018, EPA inspectors found that Defendant had failed to properly seal the effluent pipe. Inspectors also found that the influent flume is improperly constructed, likely reducing the accuracy of influent flow monitoring at the Facility.  As of the date of this Complaint, Defendant has not properly repaired and sealed the effluent pipe, nor has Defendant corrected the design defect in the influent flume.  Each of these deviations from the Facility's treatment system design constitutes a failure by Defendant to properly operate and maintain the Tuba City Facility to achieve compliance with the conditions of its Permit.

47. Based on EPA inspections and reports submitted by Defendant to EPA, from approximately March 2017 to September 2023, untreated sewage from the Facilities' collection systems overflowed onto open ground on at least 130 occasions. These sewage spills are evidence of Defendant's failure to properly operate and maintain its sewage collection systems to achieve compliance with the conditions of its NPDES Permits.  Specifically, backups or spills from the Facilities' collection systems in violation of Defendant's NPDES Permits can pose a significant risk of harm to public health from human contact with untreated sewage.  Untreated sewage contains viruses and protozoa as well as other parasites.  Infection with organisms

contained in untreated sewage can cause a number of adverse health effects ranging from minor illnesses such as sore throats and mild gastroenteritis (causing stomach cramps and diarrhea) to life-threatening ailments such as cholera, dysentery, infectious hepatitis, and severe gastroenteritis.  Children, the elderly, people with weakened immune systems, and pregnant women are at greater risk of adverse consequences from such infections than the general population.

48. Each failure to comply with the operation and maintenance requirements of the NPDES Permits identified in Paragraphs 44 through 47 of this Complaint constitutes a separate violation of a condition or limitation of an NPDES permit issued under Section 402 of the Act, 33 U.S.C. § 1342, and a violation of the CWA. These violations are ongoing.

49. Under Section 309(d) of the CWA, 33 U.S.C. § 1319(d), and 40 C.F.R. § 19.4, Defendant is liable for a civil penalty of up to $64,618 per day for each violation of any condition or limitation in a permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.  Unless restrained by an order of the Court pursuant to Section 309(b) of the CWA, 33 U.S.C. § 1319(b), Defendant will continue to violate the conditions or limitations of its NPDES Permits and the CWA by failing to operate and maintain its Facilities and systems of treatment and control to achieve compliance with the conditions of its Permits.

**THIRD CLAIM FOR RELIEF**
**(Failure to Comply with NPDES Permit Conditions: Violation of Permit Terms Requiring Submission of Biosolids and Asset Management Plans)**

50. The allegations of Paragraphs 1–35 are realleged and incorporated herein by reference.

51. The 2018 Chinle Permit's effective date was September 1, 2018, so its Biosolids Plan was due to EPA by December 1, 2018.

52. The 2018 Kayenta Permit's effective date was August 1, 2018, so its Biosolids Plan was due to EPA by November 1, 2018.

53. The 2016 Tuba City Permit's effective date was June 1, 2016, so its Biosolids Plan was due to EPA by September 1, 2016.

54. Defendant did not submit these Biosolids Plans for the Facilities to EPA until January 22, 2021.

55. On August 18, 2021, EPA notified Defendant that its Biosolids Plans for the Chinle and Kayenta Facilities did not comply with NPDES Permit requirements. EPA informed Defendant that it must revise its Biosolids Plans for the Chinle and Kayenta Facilities to comply with the surface disposal requirements in 40 C.F.R. Part 503 Subpart C, as required by its Permits.

56. Defendant did not submit Biosolids Plans for its Chinle and Kayenta Facilities that complied with the requirements of its Permits until May 10, 2023.

57. Defendant was to submit the Asset Management Program inventory as required under Special Condition (Part III.E.) of the Chinle and Kayenta 2018 Permits within two years of EPA's issuance of those Permits (*i.e.*, by July 10 and June 12, 2020, respectively).

58. Defendant submitted the inventory for the Kayenta Facility to EPA on July 30, 2021, more than a year after the required deadline.

59. Defendant submitted the inventory for the Chinle Facility to EPA on February 25, 2022, more than a year and a half after the required deadline.

60. Each failure to comply with the Biosolids Plan and Asset Management Plan submission requirements of the NPDES Permits identified in Paragraphs 51 through 59 of this Complaint constitutes a separate violation of a condition or limitation of an NPDES permit issued under Section 402 of the Act, 33 U.S.C. § 1342, and a violation of the CWA. These violations are ongoing.

61. Under Section 309(d) of the CWA, 33 U.S.C. § 1319(d), and 40 C.F.R. § 19.4, Defendant is liable for a civil penalty of up to $64,618 per day for each violation of any condition or limitation in a permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342. Unless restrained by an order of the Court pursuant to Section 309(b) of the CWA, 33 U.S.C. § 1319(b), Defendant will continue to violate the conditions or limitations of its NPDES Permits and the CWA by failing to comply with the plan submission requirements of its Permits.

**FOURTH CLAIM FOR RELIEF**
**(Failure to Comply with NPDES Permit Conditions: Reporting Requirement Violations)**

62. The allegations of Paragraphs 1–35 are realleged and incorporated herein by reference.

63. On at least 125 occasions from approximately December 2018 to September 2023 Defendant submitted at least some portion of its monthly DMR to EPA after the required deadline.  See Appendix B.

64. Each failure to comply with the reporting requirements specified in the NPDES Permits constitutes a separate violation of a condition or limitation in an NPDES permit issued under Section 402 of the Act, 33 U.S.C. § 1342, and a violation of the CWA.  These violations are ongoing.

65. Under Section 309(d) of the CWA, 33 U.S.C. § 1319(d), and 40 C.F.R. § 19.4, Defendant is liable for a civil penalty of up to $64,618 per day for each violation of any condition or limitation in a permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.  Unless restrained by an order of the Court pursuant to Section 309(b) of the CWA, 33 U.S.C. § 1319(b), Defendant will continue to violate the conditions or limitations of its NPDES Permits and the CWA by failing to comply with the reporting requirements of its Permits.

## REQUEST FOR RELIEF

WHEREFORE, based upon the allegations set forth above, the United States of America respectfully requests that this Court grant the following relief:

    a. Pursuant to Section 309(b) of the Act, 33 U.S.C. § 1319(b), issue a permanent injunction directing Defendant to take all steps necessary to come into permanent and consistent compliance with the CWA and with the requirements of the Facilities' NPDES Permits;

    b. Assess civil penalties against Defendant for each day of each separate violation of the Facilities' NPDES Permits;

    c. Award the United States its costs of this action; and

    d. Grant such other and further relief as this Court deems appropriate.

Respectfully submitted,

TODD KIM
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice

Date: January 8, 2024

*s/ Brian Schaap*
BRIAN SCHAAP
Trial Attorney
PATRICIA L. HURST
Senior Counsel
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, DC 20044
Telephone: (202) 598-0116

OF COUNSEL:

RICH CAMPBELL
Attorney Advisor
Office of Regional Counsel
U.S. Environmental Protection Agency, Region IX
75 Hawthorne Street
San Francisco, CA 94105
Telephone: (415) 972-3870
Email: Campbell.Rich@epa.gov

MEGAN KNIGHT
Attorney Advisor
Municipal Enforcement Branch
Water Enforcement Division
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
1200 Pennsylvania Ave., NW
Washington, DC 20460
Telephone: (202) 564-8942
Email: Knight.Megan@epa.gov